IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 2 8 2014

CLERK, U.S. DISTRICT COURT
By_____
           Deputy

THE DALLAS/FORT WORTH            §
INTERNATIONAL AIRPORT BOARD,     §
                                 §
          Plaintiff,             §
                                 §
VS.                              §   NO. 4:13-CV-753-A
                                 §
INET AIRPORT SYSTEMS, INC.,      §
ET AL,                           §
                                 §
          Defendants.            §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the
motion of plaintiff, The Dallas/Fort Worth International Airport
Board, to dismiss counterclaims filed against it by defendant
Inet Airport Systems, LLC ("Inet LLC"), as successor-in-interest
to Inet Airport Systems, Inc. ("Inet"). After having considered
such motion, Inet LLC's response, plaintiff's reply, and legal
authorities to which the parties have called the court's
attention in support of and in opposition to such motion, the
court has not been persuaded that such motion should be granted.
Therefore, the court is denying such motion on the assumption
that the issues presented by the motion will be re-urged in a
summary judgment context if plaintiff persists in its belief that

the legal theories it presents in its motion are factually and legally based.

A.   The Nature of Plaintiff's Claims Against Inet and the Counterclaims of Inet and Inet LLC

Plaintiff's complaint, as amended September 30, 2013, seeks recovery of actual and liquidated damages from Inet and the other defendants based on the alleged failure of Inet to substantially complete a construction project pursuant to a contract plaintiff and Inet entered into on August 6, 2009.  According to the complaint, in addition to failing to substantially complete the work called for by the contract on a timely basis, Inet did not do all the required work, with the consequence that plaintiff was forced to hire another contractor to complete the project. Plaintiff alleged that, although Inet was dissolved under Nevada law (the state in which it was incorporated) in August 2012, plaintiff had the right under a Nevada statute to sue Inet as a dissolved Nevada corporation.

Counterclaims were filed by Inet and Inet LLC against plaintiff on theories of breach of contract, unjust enrichment, and money had and received.  Each theory had as its goal recovery from plaintiff of amounts the counterclaimants alleged that plaintiff owed them for work done under the same contract upon which plaintiff's complaint was based for which Inet was not

2

paid.   Inet LLC pleaded that it is the successor-in-interest to
Inet.

B.   Plaintiff's Motion to Dismiss

Plaintiff's motion to dismiss is directed to the
counterclaims asserted by Inet LLC.   Apparently plaintiff
concluded that it did not need to bother with a request for
dismissal of the counterclaims asserted in the name of Inet
considering the fact that Inet no longer existed as a
corporation.

The premise of the motion to dismiss is that Inet, by virtue
of what plaintiff interprets as a forfeiture of Inet's
certificate of authority to conduct business in Texas in August
2003, was barred from making a request for affirmative relief in
a Texas court by the provisions of section 9.051(b) of the Texas
Business Organizations Code, reading, in pertinent part, as
follows:   "[a] foreign filing entity or the entity's legal
representative may not maintain an action, suit, or proceeding in
a court of this state . . . on a cause of action that arises out
of the transaction of business in this state unless the foreign
filing entity is registered in accordance with this chapter."

As evidence that Inet was subject to the litigation bar
created by section 9.051(b), plaintiff called the court's
attention to a document contained in the appendix to its motion

3

titled "Forfeiture pursuant to Section 171.309 of the Texas Tax Code of Inet Airport Systems, Inc."  The unauthenticated document, on a form indicating that it was issued by the Corporations Section of the Secretary of State of the State of Texas, through an Assistant Secretary of State, states "Certificate/Charter forfeited:  August 22, 2003," with the following explanation:

> The Secretary of State hereby determines and finds the following:
>
> 1.  The Secretary of State received certification from the Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code that there are grounds for forfeiture of the charter or certificate of authority of the referenced entity.
>
> 2.  That the entity has not revived its forfeited corporate privileges within 120 days after the date that the corporation privileges were forfeited.
>
> 3.  The Comptroller of Public Accounts has determined that the entity does not have assets from which a judgment for any tax, penalty, or court costs imposed under Chapter 171 of the Code may be satisfied.
>
> It is therefore ordered that charter or certificate of authority of the referenced entity be forfeited without judicial ascertainment and that the proper entry be made upon the permanent files and records of such entity to show such forfeiture as of the date hereof.

Mot. App. at 1 (Ex. A).

Plaintiff refers to section 9.051(b) as a "door closing" statute, which allows a foreign corporation subject to the

statute to defend an action,[1] but does not permit the corporation
to assert a request for affirmative relief.

In anticipation that Inet LLC would respond by reliance on
authority that a door closing statute such as section 9.051(b)
cannot be given effect if the claim involves interstate, rather
than intrastate, commerce,[2] plaintiff devotes most of the text of
its motion to a discussion and citation of authorities on that
subject, maintaining that the activities related to the
performance under the contract between plaintiff and Inet was
intrastate in nature.

C.    Inet LLC's Response

Inet LLC responded that (1) its counterclaims are compulsory
counterclaims that are being asserted as part of the defense of
plaintiff's actions against Inet, as authorized by section
9.051(c)(2), and (2) even if the door closing statute otherwise
is applicable, it would not apply to Inet LLC's counterclaims
because the contract between plaintiff and Inet involved
interstate commerce.

---

[1]Plaintiff notes in the motion that section 9.051(c)(2) provides that "[t]he failure of a foreign filing entity to register does not . . . prevent the entity from defending an action, suit or proceeding in a court in this state."

[2]See Eli Lilly & Co. v. Sav-On-Drugs, 366 U.S. 276, 283-93 (1961); Union Brokerage Co. v. Jensen, 322 U.S. 202, 212 (1944); Diversacon Indus., Inc. v. National Bank of Commerce, 629 F.2d 1030, 1032 (5th Cir. 1980).

D.    <u>Analysis</u>

    1.    The Court is Not Satisfied that Section 9.051(b)
       Applies

The court is persuaded that Inet LLC's counterclaims are compulsory counterclaims inasmuch as they arise directly out of the same transaction or series of transactions that form the basis of plaintiff's pleaded claims against Inet.[3]  However, the court is not convinced by the forfeiture document to which plaintiff has called the court's attention, or the arguments and authorities presented in its motion and reply, that section 9.051(b) is applicable.

The evidence presented by plaintiff in support of its contention that section 9.051(b) applies is the document that recites that "[t]he Secretary of State received certification from Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code that there are grounds for forfeiture of the charter or certificate of authority of the referenced entity." Mot., App. at 1 (Ex. A).  The very first case cited by plaintiff for the proposition that Inet LLC was denied the right to use

---

[3]Rule 97 of the Texas Rules of Civil Procedure provides in pertinent part as follows:
    (a)    **Compulsory Counterclaims.**  A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction; . . . .
Tex. R. Civ. Proc. 97(a).

Texas courts, including a federal court sitting in diversity, to seek affirmative relief, 839 East 19th Street, LP v. Citibank, N.A., 3:11-CV-1238-M, 2011 WL 3510902 (N.D. Tex. Aug. 9, 2011), causes the court to question whether section 9.051(b) applies here.  That case likewise involved a forfeiture under section 171.302 of the Texas Tax Code.  The parties there were in agreement that such a forfeiture denied the affected corporation the right to sue or defend in a court in the State of Texas, including a federal court.  The 19th Street court indicated that the applicable door closing statute was section 171.252 of the Texas Tax Code, which provides that "[i]f the corporate privileges of a corporation are forfeited under this subchapter, . . . the corporation shall be denied the right to sue or defend in a court of this state . . . ."  Id. at *1, n.6.  Plaintiff has failed to explain to the court why section 171.252 of the Texas Tax Code, instead of section 9.051(b) of the Texas Business Organizations Code, is not the applicable statute.  Of course, if section 171.252 applies, it would undercut Inet LLC's argument that it is entitled to assert a counterclaim as part of its

authorized section 9.051(c)(2) defense.  This is a point to which neither party has directed its attention.[4]

Another area of puzzlement has to do with plaintiff's reliance in its reply on the 1951 decision of the Court of Appeals of Texas at Fort Worth in <u>Hightower Petroleum Corp. v.</u>

---

[4]The predecessor to section 171.252 appears to be article 12.14 of the now-replaced Texas Taxation--General Code, which read, in pertinent part, as follows:

> Any corporation, either domestic or foreign, which shall fail to pay any franchise tax provided for in this Chapter when the same shall become due and payable under the provisions of this Chapter or shall fail to file any report provided for in this Chapter when the same shall become due, shall thereupon become liable to a penalty of five per cent (5%) of the amount of such franchise tax due by such corporation, and if said report has not been filed or said taxes have not been paid within thirty (30) days from the date said report or taxes shall have become due, an additional five per cent (5%) of such tax shall be forfeited; said penalty shall never be less than One Dollar ($1). . . .  If the reports required by Articles 12.08, 12.09, and 12.19 be not filed in accordance with the provisions of this Chapter, or if the amount of such tax and penalties be not paid in full on or before the thirtieth day after notice of delinquency is mailed to such corporation, such corporation shall for such default forfeit its right to do business in this State; which forfeiture shall be consummated without judicial ascertainment by the Comptroller of Public Accounts.  <u>Any corporation whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any court of this State, except in a suit to forfeit the charter or certificate of authority of such corporation.</u> . . .

Tex. Tax.--Gen. Code Ann. art. 12.14 (West 1969) (emphasis added) (repealed).  As the Fort Worth Court of Civil Appeals noted in <u>Mobile Homes of Amer. Inc. v. Easy Living Inc.</u>, 527 S.W.2d 847, 849 (Tex. Civ. App.--Fort Worth 1975, no writ), the then-applicable article 12.17 had a "provision for action of the Secretary of State in administratively forfeiting the charter of a corporation whose right to do business has been forfeited by the Comptroller of Public Accounts because of failure to pay franchise tax."  The forfeiture document upon which plaintiff relies in the instant action has the appearance of a forfeiture of the kind mentioned in the <u>Mobile Homes</u> case to which articles 12.14 and 12.17 were applicable.

Story, 236 S.W.2d 679 (Tex. Civ. App.--Fort Worth 1951, writ

ref'd).[5]   In Hightower, the court said:

> A foreign corporation without a permit to do business
> in Texas cannot maintain any suit or action, either
> legal or equitable in any court of this State upon any
> demand, which arose in whole or in part within the
> State.

236 S.W.2d at 680.   Based on the authority of Tex. Rev. Civ.

Stat. Ann. art. 1536 (West 1948), the court held that "[t]he fact

that appellant's claim is made in the nature of a cross action

cannot afford it any relief from the plain wording of the

statute."   Id.[6]

The facts recited in the Hightower case disclose that the

counterclaim the court held could not be asserted was a

compulsory counterclaim.   Thus, if Hightower can be shown to be

applicable to the circumstances affecting Inet, and if whatever

door closing applies here is the equivalent of the article 1536

that Hightower dealt with, plaintiff would seem to have the

better of the argument that the door closing statute prohibits

_____

[5]The Hightower case's "writ refused" history has particular significance because it means that the opinion in that case is the equivalent under Texas law of an opinion of the Texas Supreme Court. See Hamilton v. Empire Gas & Fuel Co., 110 S.W.2d 561, 565-66 (Tex. Comm'n App. [Op. Adopted by Supreme Ct.] 1937); Ohler v. Trinity Portland Cement Co., 181 S.W.2d 120, 123 (Tex. Civ. App.--Galveston 1944, no writ) (explaining that "a decision by a Court of Civil Appeals to which the Supreme Court refuses a writ of error[] is as binding as a decision of the Supreme Court itself") . The reign of the "writ refused" notation commenced June 14, 1927, and continued until at least 1990. See Tex. L. Rev., Texas Rules of Form at 48 (7th ed. 1990).

[6]The text of the Hightower opinion discloses that the court was referring to a counterclaim in the opinion when it used the term "cross action."

the assertion of a compulsory counterclaim.  The court does note

that article 1536 did not appear to have an exception, such as is

found in section 9.051(c)(2), pertaining to defense of an action,

suit, or proceeding in a court of this state.[7]

The United States District Court for the Southern District

of Texas cited Hightower in Kutka v. Temporaries, Inc., 568 F.

Supp. 1527 (S.D. Tex. Aug. 15, 1983) for the proposition that

article 8.18 of the Texas Business Corporation Act[8] precluded the

court from the granting of any affirmative relief on a

counterclaim.  While plaintiff relies on Kutka in its motion to

dismiss, it provides no explanation to the court as to how Kutka,

---

[7]The article 1536 upon which the Hightower decision was based was worded, in pertinent part, as follows:

> No such corporation [foreign corporation] can maintain any suit or action, either legal or equitable, in any Court of this State upon any demand, whether arising out of contract or tort, unless at the time such contract was made, or tort committed, the corporation had filed its articles of incorporation under the provisions of this Chapter.

Tex. Rev. Civ. Stat. Ann. art. 1536 (West 1948) (repealed).

[8]The now repealed article 8.18 of the Texas Business Corporation Act provided, in pertinent part, as follows:

> A.   No foreign corporation which is transacting, or has transacted, business in this State without a certificate of authority shall be permitted to maintain any action, suit, or proceeding in any court of this State (whether brought directly by the corporation or in the form of a derivative action by a shareholder) on any cause of action arising out of the transaction of business in this State, until such corporation shall have obtained a certificate of authority.  Nor shall any action, suit, or proceeding on any such cause of action be maintained in any court of this State by any successor, assignee, or legal representative of such foreign corporation, until a certificate of authority shall have been obtained by such corporation or by a foreign corporation which has acquired all or substantially all of its assets. . . .
>
> B.   The failure of a foreign corporation to obtain a certificate of authority to transact business in this State . . . shall not prevent such corporation from defending any action, suit or proceeding in any court of this State.

Tex. Bus. Corp. Act Ann. art. 8.18 §§ A & B (West 1980) (repealed).

or article 8.18, has any particular significance to the issue of whether Inet LLC, claiming through Inet, is prohibited from asserting a counterclaim in the instant action.

If the court does not become persuaded that Hightower is pertinent legal authority, the court would find the Fifth Circuit's opinion in Environmental Coatings, Inc. v. Baltimore Paint & Chem. Co., 617 F.2d 110 (5th Cir. 1980)(per curiam) persuasive, assuming that the court were to conclude that section 9.051(b) applies, but not if the court concludes that section 171.252 applies.

As is apparent from the foregoing discussion, the filings of the parties in support of and opposition to plaintiff's request for dismissal have raised a number of interesting questions but have not provided the court the facts, legal authority, or analysis necessary for the court to make an informed decision as to the ultimate question of whether something has happened to prevent Inet LLC, as successor to Inet, from asserting a compulsory counterclaim in this action.  If plaintiff wants the court to revisit that issue in a summary ruling context, plaintiff is welcome to raise it again in a motion for summary judgment.  In the meantime, both parties will have an opportunity to engage in appropriate discovery to establish whatever facts

are essential to the support of or opposition to plaintiff's theory.

  2.  <u>A Decision on the Intrastate Versus Interstate Issue
      Cannot Be Resolved on a 12(b)(6) Motion</u>

For the court to be in a position to determine whether Inet LLC's counterclaims are barred by whatever door closing statute is applicable, the court still would be required to resolve the intrastate versus interstate issue before making a final decision.

Inet LLC contends that the counterclaims arise from a transaction involving interstate commerce, and in support of that contention Inet LLC has appended to its response to the motion to dismiss the declaration of defendant Michael F. Colaco on the subject of interstate aspects of performance by Inet under the August 6, 2009 construction contract. Plaintiff replied that the declaration should not be considered in the context of plaintiff's 12(b)(6) motion on the ground that the court may not look beyond allegations of the complaint in deciding such a motion. Reply at 4, ¶ 1. Plaintiff "requests that the Court exclude the Colaco Declaration from consideration." <u>Id.</u>

The court agrees that the Colaco declaration should not be considered in a ruling on plaintiff's motion. Furthermore, the court has concluded that the court cannot decide the intrastate

versus interstate issue without going outside the material the court is authorized to consider in ruling on a motion to dismiss for failure to state a claim upon which relief may be granted. That issue, if it continues to be pertinent, will best be dealt with in the context of a motion for summary judgment if either party considers that a summary ruling on the issue is appropriate.

* * * * *

Therefore,

The court ORDERS that plaintiff's motion to dismiss Inet LLC's counterclaims be, and is hereby, denied.

SIGNED January 28, 2014.

JOHN McBRYDE
United States District Judge