

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 16 2015
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THE DALLAS/FORT WORTH INTERNATIONAL AIRPORT BOARD,<br><br>Plaintiff,<br><br>VS.<br><br>INET AIRPORT SYSTEMS, INC., ET AL.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ NO. 4:13-CV-753-A<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

On June 8, 2015, came on for nonjury trial the issues remaining for decision in the above-captioned action. Plaintiff/counterdefendant, The Dallas/Fort Worth International Airport Board ("DFW"), and defendants/counterplaintiffs INET Airport Systems, Inc. ("INET Inc."), and INET Airport Systems, LLC, as successor in interest to INET Airport Systems, Inc. ("INET LLC"), appeared by and through their respective attorneys of record and corporate representatives.[1] In accordance with the court's rulings during the trial, and upon review of filings made pursuant to the court's order during the trial,[2] the record, and applicable authorities, the court determines that the outstanding payment of $318,189.40 owed by DFW should be paid to INET LLC,

---

[1] INET Inc. and INET LLC are hereinafter collectively referred to as "INET."

[2] The court requested briefing on the issue of whether recovery could be made for attorney's fees incurred in the preparation, filing and pursuit of the motion for attorney's fees.

and that INET LLC should have and recover from DFW reasonable and necessary attorney's fees in the amount of $975,539.34, for a total recovery by INET LLC from DFW of $1,293,728.74.

I.

Events Leading to the Trial

On March 30, 2015, the court signed a memorandum opinion and order granting in part and denying in part DFW's motion for summary judgment and granting defendants' motion for summary judgment.[3] Doc. 85.[4] Of primary import was the court's determination that DFW, rather than INET Inc., had first materially breached the contract between them. Id. at 13-14. The court also determined that DFW's claims against Hartford were barred by limitations, id. at 16, 18, and made that ruling final by separate judgment, Doc. 86.

On April 6, 2015, the court conducted the pretrial conference and signed the pretrial order presented by the parties. Doc. 92. During the pretrial conference, based on discussions with counsel, the court determined that DFW's claims against defendant Colaco should be dismissed. Doc. 94 at 6. The

---

[3]At that time, the defendants were INET Airport Systems, Inc., Michael F. Colaco ("Colaco"), and Hartford Fire Insurance Company ("Hartford").

[4]The "Doc. __" references are to the number assigned to the referenced item on the Clerk's docket for this Case No. 4:13-CV-753-A.

2

court so ordered, Doc. 90, and made that ruling final by separate judgment, Doc. 91.

To the court's surprise, DFW apologetically announced during the pretrial conference that, although it had never raised the issue before, it had that morning filed a motion to dismiss INET's counterclaim on the ground that the court lacked subject matter jurisdiction by reason of the provisions of sections 271.151-.160 of the Texas Local Government Code. See Doc. 94 at 35-38; Doc. 87. Following full briefing, the court, by memorandum opinion and order signed April 27, 2015, denied the motion to dismiss.[5] Doc. 103. The court determined that the immunity from suit claimed by DFW did not implicate subject matter jurisdiction. Id. at 7-10. Rather, immunity was a privilege that could be and was waived by DFW's conduct. Id. at 7.

On April 27, 2015, the court also signed an order setting deadlines for the accomplishment of certain things relative to the nonjury trial of the action, Doc. 104, consistent with the waiver by the parties of jury trial made during the pretrial conference, Doc. 94 at 4-5. In that order, the court explained, in footnote 1 on page 2, that it anticipated that the issues to be tried would not be expanded beyond those remaining after the rulings of the court in its March 30 memorandum opinion and order

---

[5] This order was corrected by order signed June 8. Doc. 144.

3

and at the pretrial conference and concessions made by DFW at the pretrial conference. Doc. 104 at 2, n.1. Specifically, the record at that time made clear that there would be no issues to be resolved at trial except (1) possibly an issue concerning which of the counterclaimants, INET Inc. or INET LLC, would be entitled to recover the $318,189.40 determined to be owed by DFW, and (2) the amount of attorney's fees to be recovered by INET from DFW.

DFW conceded at the pretrial conference that an INET entity, INET Inc. or INET LLC, would be entitled to recover the funds owed by DFW under the contract, which consisted of retainage and payment of an outstanding pay request for work done by INET Inc., if certain information could be provided. Doc. 94 at 26-30. Accordingly, the court required defendants to provide to DFW (1) documentation to show that INET LLC was the successor to INET Inc., (2) the consent of Hartford to DFW's release of the retainage, and (3) verification that all subcontractors had been paid, and to file a document reflecting that they had done so. Doc. 89. Defendants filed their notice of compliance on April 16, 2015, Doc. 96, and attached as proof of compliance the documents that had been provided to DFW, id. attachs. 1-3. On April 17, DFW filed a notice of intent to file a response to the notice, Doc. 98, and, on April 22, filed such response with an appendix in support, Docs. 100 & 101. The sole focus of the response was that

INET LLC was not the successor to INET Inc. DFW did not question the consent of Hartford to release of the retainage or the representation that all subcontractors had been paid. The court ordered INET to reply, Doc. 102, which they did, Doc. 110. By motions filed April 28 and 29, DFW sought leave to file further supplements to its response. Docs. 105 & 108.

By order signed April 30, 2015, the court discussed the filings described in the preceding paragraph and noted that DFW was again seeking to raise issues that had not been raised prior to that time and that had been waived, to wit: (1) INET Inc. did not assign the right to collect any account receivable from DFW to INET LLC, (2) INET LLC had never been joined as a party, and (3) Cavotec INET US, Inc. was a necessary party that had never been joined. Doc. 112 at 2-3. In particular, DFW had known of the sale of assets to Cavotec since at least September 20, 2013, when it had filed its first amended complaint.[6] And, DFW had already represented to the court at the pretrial conference that it stood ready to make the payment of the retainage and the outstanding invoice for work performed once it received the letter from Hartford and the verification that all subcontractors had been paid. Doc. 94 at 30. That payment would be made either to INET

---

[6] According to defendants, DFW had been in possession of documents concerning the Cavotec sale since 2012. Doc. 110 at 3.

5

Inc. or INET LLC. The court denied DFW's requests to further supplement its response[7] and again described the two issues that the court anticipated would be tried. Doc. 112 at 4.

By order signed June 1, 2015, the court for a third time following the pretrial conference clarified that the issues to be tried were (1) which of the INET entities was to recover the $318,289.40 owed by DFW, and (2) the amount of reasonable and necessary attorney's fees that were equitable and just to be recovered by one or both of the INET entities. Doc. 140. By order signed June 4, 2015, the court notified the parties that it had determined that INET LLC had the better of the argument regarding the first issue, and that the court was prepared to receive evidence as to the attorney's fees issues.[8] Doc. 143.

II.

The Trial

At the trial, Colaco and attorneys Craig Taggart and David Walton were sworn and testified. Exhibits 1-3 and 7-18 were admitted.[9] Doc. 145.

---

[7] The motions sought leave to file hearsay statements of Cavotec's attorney.

[8] It appeared that the parties intended to rely on the motion for attorney's fees and supporting documents that had been filed, rather than to present evidence at trial. Thus, the order was necessary to clarify the court's intent that the matter be tried.

[9] Exhibits 1-3 and 7-13 were agreed upon trial exhibits and exhibits 14-18 were exhibits identified during the trial as INET exhibits, to which DFW did not object.

III.

<u>Analysis of the Issues</u>

A. <u>Recovery by INET LLC</u>

As the court long-ago determined, and DFW has admitted based on the court's ruling as to breach of the contract, DFW owes either INET Inc. or INET LLC for the work done by INET Inc. pursuant to the contract at issue in this action. At the pretrial conference, DFW acknowledged that to be the effect of the court's summary judgment rulings. Doc. 94 at 25. There is no dispute that INET Inc. signed the contract, performed the work thereunder, and submitted its pay request to DFW.[10] Ex. 3. To the extent there were any prerequisites to the payment for work done and release of the retainage, they have occurred.[11]

As for which entity is entitled to collect the moneys DFW has been withholding, the evidence establishes the following: Colaco was the sole owner of INET Inc. Doc. 152 at 16. By contribution agreement dated August 9, 2012, Colaco transferred

---

[10] The payment request showed entitlement by INET to both amounts being awarded to INET LLC, the $78,825.15 retainage and the $240,364.25 unpaid balance. Ex. 3.

[11] At the trial, counsel for DFW tried to make much of the fact that Ex. 9, the letter authorizing release of the retainage, was signed by the bond department of the parent company of Hartford and provided that the retainage could be released to Colaco, the sole shareholder of INET LLC. Doc. 152 at 27-29. Of course, DFW never objected that the letter was not sufficient. See pl.'s resp. to defs.' notice of compliance filed April 22, 2015. This was not a contested issue listed in the pretrial order. And, at this point, any objection by Hartford to release of the retainage would be invalid, as Hartford has been dismissed from the lawsuit and has no interest in the retainage. And, Colaco testified that payment should be made to INET LLC. <u>Id.</u> at 20.

7

all of his shares of INET Inc. to INET LLC. Id. at 10; Ex. 7. On August 10, 2012, Colaco as sole director and INET LLC as sole stockholder caused INET Inc. to be dissolved. Ex. 8. All assets of INET Inc., including the amounts receivable under the contract between INET Inc. and DFW, were transferred to INET LLC. Id. As INET Inc. no longer exists, and INET LLC is the surviving entity, INET LLC is entitled to recover the moneys owed by DFW. This is consistent with section 30.0 of the special provisions of the contract, which provides that the contract is binding on and inures to the benefit of successors of the parties thereto. Ex. 1 at DFW 1536242.

B.   Attorney's Fees

The primary issue for trial was the amount of attorney's fees to be awarded for the pursuit of INET's counterclaim discussed above. The parties are in accord that the provisions of Tex. Local Gov't Code §§ 271.153 govern. Doc. 115 at 1-2; Doc. 130 at 6, ¶ 11 and 20, ¶ 41; Doc. 151 at 5, ¶ 16. Reasonable and necessary attorney's fees that are equitable and just are recoverable in a case such as this. Tex. Local Gov't Code § 271.153(a)(3).

DFW insists that fees can only be awarded for work attributable to INET's pursuit of its counterclaim and exclusive of work done to defeat DFW's claim. This despite the fact that

8

the only conclusion to be drawn from the summary judgment evidence considered by the court in making its March 30 rulings, by the admissions of DFW during the pretrial conference, and by the evidence at trial is that DFW withheld payment on the invoice and refused to release the retainage because it took the position that INET Inc. had breached the contract. In order to prevail on its own claims, INET had to defeat DFW's claim that INET Inc. was the first to breach the contract. Thus, an award as sought by INET is appropriate. Campbell Harrison & Dagley, L.L.P. v. Blue, 843 F. Supp. 2d 673, 692-93 (N.D. Tex. 2011)(citing De La Rosa v. Kaples, 812 S.W.2d 432, 434 (Tex. App.-San Antonio 1991, writ denied); 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc., 245 S.W.3d 488, 507 (Tex. App.-Houston [14th Dist.] 2007, pet. denied)); Varner v. Cardenas, 218 S.W.3d 68, 69 (Tex. 2007). The primary case upon which DFW relies makes this abundantly clear:

> For example, to prevail on a contract claim a party must overcome any and all affirmative defenses (such as . . . prior material breach), and the opposing party who raises them should not be allowed to suggest . . . that overcoming those defenses was unnecessary.

Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 314 (Tex. 2006)(emphasis added). An affirmative defense asserted by DFW to the counterclaim was prior material breach: whether DFW or INET

9

would be able to recover on its claims under the contract depended upon which party first materially breached the contract.[12] The argument that the claims had to be mirror images in order for attorney's fees to be recovered is absurd.[13]

INET relies on the testimony of Messrs. Taggart and Walton and the evidence of exhibits 11-18, as supplemented by the notice of correction filed following the trial with regard to Mr. Walton's testimony, Doc. 148, to support its request for attorney's fees. In accordance with the testimony at trial, the court finds that counsel limited the fees sought to those attributable to work done to further the counterclaim for payment of the unpaid invoice and retainage, which necessarily included work done to defeat the claim asserted by DFW. Counsel omitted time for all work performed on behalf of defendants Hartford and Colaco. Doc. 152 at 41. And, counsel eliminated time related to other claims, such as INET's unjust enrichment claim. See, e.g., Doc. 152 at 53-55.

---

[12] DFW obviously understood this to be the case as evidenced by its attorneys refusal to admit that it was withholding the payment due and the retainage based on the contention that INET Inc. had breached the contract, i.e. INET first had to defeat DFW's claim before it could prevail on its counterclaim, when, as stated, that is the only conclusion to be reached. Doc. 152 at 76-77. In other words, counsel for DFW refused to answer the court's questions, knowing that truthful answers would result in DFW being liable for the attorney's fees sought (based on the court's determination of reasonableness, necessity, equity, and justice).

[13] DFW apparently fails to understand what is meant by the term "segregate." INET has met its burden by showing that it has omitted from its request for attorney's fees all work unrelated to the things necessary to prevail and make a recovery on its counterclaim for the moneys owed by DFW.

Although California counsel charged their clients much higher rates, INET LLC is are only seeking to recover rates that are recognized as reasonable in this district. Doc. 152 at 57. DFW does not dispute that the hourly rates sought are reasonable. Doc. 152 at 78-79. Nor does it dispute the number of hours for which reimbursement is sought. Id. at 79.[14]

An important part of the court's assessment of a fee request is to consider whether counsel exercised billing judgment, by which is meant exclusion of hours that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Here counsel testified that they exercised billing judgment. See, e.g., Doc. 152 at 63-64; 68-69. And, as noted, DFW did not object that the number of hours should be reduced for any reason.

Thus, the court finds that INET incurred reasonable and necessary attorney's fees in the amount of $975,539.34[15] in

---

[14] The court had asked for further briefing on the issue of whether INET could recover fees incurred in the filing, presentation and pursuit of its motion for attorney's fees. It occurs to the court that DFW has waived any complaint in this regard, inasmuch as DFW did not object to the hours to which counsel for INET testified, which included significant time on these tasks. In any event, the court is satisfied by the briefing that Texas does allow recovery for time spent in the pursuit of attorney's fees. See, e.g., Johnson v. Mississippi, 606 F.2d 635, 638 (5th Cir. 1979). The statute at issue is not so limited as DFW urges; instead, the only limitation is that the fees awarded be reasonable and necessary, equitable and just. Tex. Local Gov't Code § 271.153. In this case, where DFW has been anything but reasonable, it has very little room to complain about the fees INET was required to incur in reference to unreasonable positions DFW repeatedly has taken.

[15] This amount is the sum of the $862,763.34 attributable to work by INET's California counsel as testified to by Mr. Taggart, Doc. 152 at 40-42, and $112,776.00 attributable to work by INET's local

(continued...)

pursuing its counterclaim for payment. The court further finds that an award to INET LLC of such amount would be equitable and just. Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). As the court has noted in various orders, DFW's conduct throughout the proceedings has been abhorrent. DFW has caused the proceedings to be prolonged by seeking to re-litigate matters that had already been resolved and to raise issues long after the time for doing so had passed. DFW insisted on proceeding to trial when any reasonable party would have resolved the issues remaining at the pretrial conference. There is simply no reason that the two issues remaining needed to be tried.[16] This is borne out by the failure of DFW to make any points in cross-examination at trial and its concession that it did not question the number of hours spent by INET's attorneys in pursuing the counterclaim. The recalcitrant conduct is not limited to the litigation, however, it has permeated the course of proceedings between DFW and INET from inception of the contract. As set forth in the court's March

---

[15](...continued)
counsel as testified to by Mr. Walton, Doc. 152 at 65-68, and as set forth in the notice of correction filed June 8, 2015, by INET, Doc. 148.

[16] As Mr. Taggart noted at the pretrial conference, INET's "attorneys fees are definitely, you know, considerably negotiable. We would like to resolve the case. I mean, we really do. So, I mean, I think that we could sit–I think that we could sit down and reach a resolution of this . . ." Doc. 152 at 52. And, although DFW's representative said that DFW was willing to sit down and talk, id., no resolution was reached. Instead, DFW continued to urge the totally unmeritorious position that the court lacked subject matter jurisdiction and other similarly frivolous arguments.

30, 2015, memorandum opinion and order, DFW knew early on that it needed to issue a change order because its plans and specifications for installation of the air handling units was insufficient. Yet, it refused to act reasonably, insisting that INET was in default. Doc. 85 at 8-11. All of the fees incurred by INET were as a result of DFW's breach of the contract and its willful failure to cooperate in seeking resolution of the dispute between the parties. See Abraxas Pet. Corp. v. Hornburg, 20 S.W.3d 741, 763 (Tex. App.-El Paso 2000, no pet.)(award of attorney's fees proper based on misconduct of breaching party). Unlike Knighton v. Int'l Bus. Machines Corp., 856 S.W.2d 206, 210 (Tex. App.-Houston [1st Dist.] 1993, writ denied), the court cannot find that DFW had legitimate rights to pursue such that each party should bear its own attorney's fees. Rather, the only just and equitable ruling would be for DFW to bear INET's attorney's fees.

IV.

Order

For the reasons given above,

The court ORDERS that INET LLC is the appropriate entity to which plaintiff should pay the $318,189.40 previously determined to be owed and that INET LLC should recover from DFW reasonable

and necessary attorney's fees in the amount of $975,539.34, for a total recovery by INET LLC from DFW of $1,293,728.74.[17]

SIGNED June 16, 2015.

JOHN McBRYDE
United States District Judge

---

[17]The court is not awarding prejudgment interest as neither party presented any evidence on that subject.

14